## LG ELECTRONICS U.S.A., INC., Plaintiff,

v.

## The UNITED STATES, Defendant.

### Slip Op. 97–179.
### Court No. 96–05–01419.

United States Court of International Trade.

Dec. 31, 1997.

Wasserman, Schneider & Babb, New York City (Patrick C. Reed and Yong Hak Kim), for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, John J. Mahon, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, and Beth Brotman, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of counsel, Washington, DC, for Defendant.

## OPINION

RESTANI, Judge.

This matter is before the court on cross-motions for summary judgment, pursuant to USCIT R. 56. Plaintiff LG Electronics, U.S.A., Inc., formerly known as Goldstar U.S.A., Inc., and Goldstar Electronics International, Inc., ("LG") asks the court to order liquidation, at a rate determined by the United States Department of Commerce ("Commerce"), of 57 entries for which antidumping duties were allegedly deposited with the United States Customs Service ("Customs").[1] LG also asks the court to order Customs to refund, with interest, excess duties paid, measured by the difference between the duty as liquidated and the duty deposited. The government asks the court to rule instead that the entries have already been liquidated, thus that no refund or interest is due, and that the plaintiff is barred from bringing suit because the court lacks jurisdiction. The court finds that each party is correct as to certain entries and therefore grants summary judgment in part to plaintiff and in part to defendant.

## Background

From 1984 to 1988, LG imported color televisions receivers from Korea, *Compl.*, at 3, which were subject to an antidumping order. *Color Television Receivers from the Republic of Korea*, 49 Fed. Reg. 18,336, 18,-337 (Dep't Commerce 1984) (antidumping order). LG deposited antidumping duties with Customs upon entry of 54 shipments of televisions.[2] *Compl.*, at Schedule A (table of entry dates). Commerce suspended liquidation of these entries while determining proper antidumping duty rates. Plaintiff pe-

---

1. With a view toward the standard of review at summary judgment, in bringing its motion, plaintiff "abandoned" its claim to ten of the 67 entries originally at issue. *Pl.'s Br.*, at 7; *Pl.'s Reply Br.*, at 14. These are entries for which LG concedes *prima facie* evidence of liquidation exists, precluding summary judgment based on LG's theory that liquidation never occurred. These entries include: Newark entry Nos. 077–0880877–4, 077–0880878–2, 077–0880875–8, 077–0880990–5, 077–0881140–6, 077–0881207–3, and 077–0881208–1, *Pl.'s Stmt. of Uncontested Material Facts*, Schedule A, at 3, and Chicago entry Nos. 416–0009905–9, 416–0010154–1, and 416–0010842–1, *Pl.'s Reply Br.*, at 14. Further, liqui-

dation of these entries was not enjoined at the time it occurred.

2. There is a dispute as to whether antidumping duties were deposited for three "no change" entries, Nos. 85–421941–6, 600–0711824–7, and M27–0001404–4. It appears there is insufficient evidence indicating payment, and plaintiff has not asserted that it will demonstrate payment at trial. Thus, summary judgment is awarded defendant on these entries. In any case, as will be discussed, plaintiff does not succeed on the "no change" entries.

titioned this court for review of Commerce's determinations. *Goldstar Co., Ltd. v. United States*, Ct. No. 86–12–01558 (entries May 1, 1984 to Mar. 31; 1985), consolidated with other cases Mar. 24, 1988, as *Independent Radionic Workers of Am. v. United States*, Consol. Ct. No. 86–12–01551; *Goldstar Co., Ltd. v. United States*, Ct. No. 88–08–00593 (entries Apr. 1, 1985 to Mar. 31, 1986), consolidated with other cases Aug. 14, 1991, as *Zenith Elecs. Corp. v. United States*, Consol. Ct. No. 88–07–00488; *Goldstar Co., Ltd. v. United States*, Ct. No. 90–07–00370 (entries Apr. 1, 1986 to Mar. 31, 1987), consolidated with other cases Aug. 14, 1991, as *Goldstar Co., Ltd. v. United States*, Consol. Ct. No. 90–07–00370, recaptioned May 19, 1994, as *Zenith Elecs. Corp. v. United States*, Consol. Ct. No. 90–07–00339; *Goldstar Co., Ltd. v. United States*, Ct. No. 91–04–00326 (entries Apr. 1, 1987 to Mar. 31, 1988), consolidated with other cases Aug. 14, 1991, as *Samsung Elecs. Co. v. United States*, Consol. Ct. No. 91–04–00327. Pending these reviews, and during settlement negotiations between plaintiff and Commerce, this court issued preliminary injunctions against liquidation of the disputed entries. *Zenith Elecs. Corp. v. United States*, Ct. No. 86–12–01558 (CIT Dec. 22, 1986) (preliminary injunction order); *Zenith Elecs. Corp. v. United States*, Ct. No. 88–07–00488 (CIT July 18, 1988) (preliminary injunction order); *Zenith Elecs. Corp. v. United States*, Ct. No. 90–07–00339 (CIT Aug. 9, 1990) (preliminary injunction order); *Zenith Elecs. Corp. v. United States*, Ct. No. 91–04–00304 (CIT May 1, 1991) (preliminary injunction order).

During the period of suspension, from 1984 to 1990, Customs prematurely posted notice of liquidation at the duty rate imposed at entry for all 54 entries remaining at issue. *Pl.'s Doc. App. of Entry Papers, as corrected by, Def.'s Br.*, at 25, and *error acknowledged by, Pl.'s Rep. Br.*, at 15. Customs' computer, the Automated Commercial System (hereinafter "ACS"), generated notice of three types of liquidations: notices of deemed liquidation of New York Entry No. 84–916368–7, *Pl.'s Doc. App. of Entry Papers*, at 2, and Los Angeles Entry No. 86–445948–6, *Pl.'s Reply Br.*, at 15; notices of "automatic liquidation" [3] of 27 entries; and notices of "no change liquidation" [4] of 25 relevant entries. *Id.* at 1–7. The parties agree that computer-generated notices of liquidation were posted and that none of the liquidations were protested within 90 days of the notice given, as specified by 19 U.S.C. §§ 1514(a) and (c)(2) (1994).

In May 1994, LG and Commerce reached a settlement, setting proper antidumping duty rates lower than the rates imposed at entry, and the preliminary injunctions against liquidation were lifted, permitting liquidation at the new rates set by Commerce. *Pl.'s Stmt. of Uncontested Material Facts*, at 4; *Indep. Radionic Workers*, Consol. Ct. No. 86–12–01551 (CIT Jul. 8, 1994); *Zenith Elecs.*, Consol. Ct. No. 88–07–00488 (CIT May 19, 1994); *Zenith Elecs.*, Consol. Ct. No. 90–07–00339 (CIT Jul. 8, 1994); *Samsung Elecs.*, Consol. Ct. No. 91–04–00327 (CIT May 19, 1994). On September 6, 1994, Commerce issued

---

**3.** Disputed "automatic" liquidations include: New York/Newark entries 84–525820–8, 84–525826–6, 84–916979–1, 85–938867–2, 85–939320–1, 86–973673–5, 86–974967–0, 077–0870169–8, 077–0870317–3, 077–0870356–1, 077–0870456–9, 077–0870479–1, 077–0870598–8, 077–0870634–1, 077–0870708–3, 077–0870710–9, 077–0871426–1, 077–0874700–6, and 077–0880876–6, Los Angeles entries 85–417877–0, 86–443089–0 (listed in *Pl.'s Br.* as "no change," *Pl.'s Br.*, Doc. App. at 4, revised to "automatic" in *Pl.'s Rep. Br.*, at 18), 86–443094–2, 86–443106–4, and 86–445946–0, and Stockton/San Francisco entries 86–177354–7, 975–0004615–2, and 975–0004616–0. *Pl.'s Br.*, Doc. App. at 1–6.

**4.** Disputed "no change liquidations" include: New York entries 85–943491–1, 86–822161–0,

and 077–0870152–4, Los Angeles entries 84–208776–0, 85–415077–9, 975–0001175–0, 975–0001703–9, 975–0001704–7, 975–0002048–8, 975–0002049–6, and 975–0002050–4, (Los Angeles entry 86–445948–6 is listed here as "no change" but revised to "deemed" at *Pl.'s Rep. Br.*, at 15), Memphis entries 600–0704585–3, 600–0705010–1, 600–0709998–3, 600–0713426–9, 600–0714091–0, 600–0716774–9, 600–0718317–5, 600–0719744–9, 600–0719745–6, 600–0719746–4, 600–0721671–0, and 600–0722033–2, Chicago entry 416–0009824–2 (Chicago entries 416–0009905–9, 416–0010154–1, and 416–0010842–1 were listed as "no change" but were revised to uncontested by LG at *Pl.'s Rep. Br.*, at 14) and Atlanta entry 86–469803–0. See *supra* note 2 as to disposition of three other "no change" entries.

CIE Notice N–104/83 Supp. # 46, directing the Customs Service to liquidate the entries at the lower rate and to issue refunds with interest of the difference between the liquidation rate and the deposit rate, per 19 U.S.C. § 1677g (1994). *Pl.'s Stmt. of Uncontested Material Facts,* at 4–5. When Customs did not comply with Commerce's instructions, on May 23, 1996, LG filed this action, contending that the alleged liquidations previously ordered by Customs had not occurred or were invalid. *Compl.,* at 1.

## Standard of Review

Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). The court must be sure "all reasonable inferences [are] drawn in favor of the party opposing summary judgment." *Pfaff Am. Sales Corp. v. United States,* 16 CIT 1073, 1075 (1992). If a factual dispute for which a reasonable trier of fact could rule against the movant remains, the court must not grant the motion for summary judgment. *Id.*

## Jurisdiction

Liquidation is "the final computation or ascertainment of the duties ... accruing on an entry." 19 C.F.R. § 159.1 (1997). In this case, liquidation includes Customs' final calculation of antidumping duties owed on the importation of the televisions from Korea. Liquidation of antidumping duties can occur two ways: by operation of law, after the expiration of a statutorily defined period, 19 U.S.C. § 1504(a) (1994) (deemed liquidation), or by order of Customs, 19 U.S.C. § 1500 (1994). Plaintiff contends that the 54 entries at issue have yet to be liquidated because decisions to liquidate were not made and proper notices of liquidation were not given. LG alleges jurisdiction under 28 U.S.C. § 1581(i) (1994).[5]

The government counters that liquidation of these entries has occurred and that the court lacks jurisdiction, because plaintiff did not protest within 90 days of liquidation, as specified in 19 U.S.C. § 1514.[6] A decision to liquidate, including the legality of the liquidation itself, becomes final unless a protest of the decision is filed within 90 days of the entry of liquidation. 19 U.S.C. § 1514; *see Juice Farms, Inc. v. United States,* 68 F.3d 1344, 1346 (Fed.Cir.1995) (parties bound by even erroneous, illegal liquidation not protested within 90 days); *United States v. A.N. Deringer, Inc.,* 66 C.C.P.A. 50, 593 F.2d 1015, 1020 (1979) (any protest of liquidation, including a challenge to its legality, must occur within 90 days).

The government's jurisdictional argument begs the issues controlling summary judgment. To determine whether plaintiff's suit may be heard, the court must consider whether a liquidation has in fact occurred such as to trigger the 90 day period. Thus the court now turns to that question, as part of a two-step inquiry, asking, as to the 52 "no

5. To the extent this action lies under 28 U.S.C. § 1581(i), it was timely. The statute of limitations for such actions is two years from the accrual of the action. 28 U.S.C. § 2636(i) (1994). This action accrued when LG had notice that Customs would not obey Commerce's order to liquidate at the agreed-upon rates. In May 1994, LG settled its dispute with Commerce over the correct antidumping duty rate, *Pl.'s Stmt. of Uncontested Material Facts,* at 4, and was dismissed from litigation over the disputed entries. *Id.* At that time, preliminary injunctions against LG liquidations were lifted. *Id.* Commerce issued liquidation instructions to Customs on September 6, 1994. *Id.* at 4. LG then sought liquidation at the new rates, and Customs reported that the entries had already been liquidated. The complaint was filed May 23, 1996, which is less than 2 years from September 1994, when Commerce issued its liquidation instructions to Customs. *Id.* at 7, 9; *Pl.'s Br.,* at 9.

6. This court may hear a challenge to a denied timely protest of liquidation. 28 U.S.C. § 1581(a).

[D]ecisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

(5) the liquidation ... of an entry ...

shall be final and conclusive upon all persons ... unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade....

19 U.S.C. § 1514(a) (1988). Any protest "shall be filed with such customs officer within ninety days." 19 U.S.C. § 1514(c).

change liquidations" and "automatic liquidations" and then the two deemed liquidations, first whether the liquidations occurred and, second, if so, whether they were cognizable.

## Discussion

■ Customs' ACS is programmed to automatically liquidate entries, which are neither suspended nor extended, in their fiftieth week. The "automatic liquidation" procedure "orders" liquidation and issues notice of liquidation at the duty rate deposited upon entry.[7] "No change" liquidations result from Customs' employees entering liquidation codes in the ACS, thereby ordering liquidation and causing the system to generate notices of liquidation. Notices of "automatic liquidation" or "no change liquidation" were posted for 52 of the 54 entries, all within the period of suspension. *Compl.*, at Schedule B, *Def.'s Resp. to Pl.'s Stmt. of Uncontested Material Facts*, at 2–3 (table of entry and liquidation dates, as amended). As types of liquidation by order, effective "automatic liquidation" and "no change liquidation" require both decision and notice.

### "No Change" Liquidations

■ The erroneous "no change liquidations" were protestable decisions as defined by statute. 19 U.S.C. § 1514(a) (1988). Customs decisions are "substantive determinations involving the application of pertinent law and precedent to a set of facts, such as tariff classification and applicable rate of duty." *United States Shoe Corp. v. United States,* 114 F.3d 1564, 1569–70 (Fed.Cir.1997) (collecting harbor maintenance tax a purely "ministerial task" not requiring a decision by Customs), *cert. granted,* — U.S. ——, 118 S.Ct. 361, 139 L.Ed.2d 281, 1997 WL 561769 (Oct. 31, 1997). A passive activity is not a decision. *Id.; see also Dart Export Corp. v. United States,* 43 C.C.P.A. 64, 69–70, 74

(1956) (accepting duty deposits falls short of decision-making). Where Customs only collects antidumping duties and does not determine the rate or amount of duties, Customs has not made a protestable decision. *Mitsubishi Elecs. Am., Inc. v. United States,* 44 F.3d 973, 976–77 (Fed.Cir.1994). By contrast, *calculation* of antidumping duties by Commerce is a decision. *Id.* In the instant case, Customs has more than merely received duties. The actions here were more than merely ministerial. Relatively soon after entry, Customs decided for each "no change" entry that the rate of duty imposed at the time of deposit was correct and that the entry should be liquidated at that rate. By ordering the liquidations, Customs went beyond ministerial acts; Customs determined the amount of duty imposed.

■ Plaintiff fails to persuade the court that Customs' failure to stamp some files "liquidated" indicates a lack of decision to liquidate. Stamping the files is not required, although a stamped file is *prima facie* evidence of liquidation. *Tropicana Prods., Inc. v. United States,* 909 F.2d 504, 506 (Fed.Cir. 1990). Stamping "simply provides the importer with a form of documentary proof that liquidation has taken place." *Id.*

As the statute requires, the decisions to liquidate the "no change" entries were made by the "appropriate customs officer." 19 U.S.C. § 1500 (1988).[8] Customs designates who is the appropriate customs officer. This court has found the appropriate customs officer to be "the officer making the decision to liquidate." *International Cargo & Surety Ins. Co. v. United States,* 15 CIT 541, 545, 779 F.Supp. 174, 178 (1991). Because there is no evidence to contradict the presumption that the individuals who entered the "no change liquidations" had authority to do so, the court considers they were "appropriate customs officers" within the meaning of the statute.[9]

---

7. Customs asserts it cannot reliquidate an entry that has been deemed liquidated. By liquidating automatically, Customs seeks to avoid full "deemed liquidation," or liquidation by operation of law under 19 U.S.C. § 1504 (1988), and thereby attempts to preserve the possibility of reliquidation.

8. The statute was not amended until Pub.L. 103–182, § 638(1) (1993), which allowed liquidation by the "Customs Service," in order to accommodate increased automation. H.R.Rep. No. 103–361(I), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2687.

9. None of the "no change liquidations" occurred after liquidation was enjoined by the court. Fur-

In addition to a decision to liquidate, for effective liquidation, appropriate notice of an ordered liquidation must be given. *Juice Farms,* 68 F.3d at 1346. Notices of liquidation posted at the Customs' Office at the port of entry (bulletin notice of liquidation) are sufficient notice, 19 C.F.R. § 159.9 (1997) and *Goldhofer Fahrzeugwerk GmbH & Co. v. United States,* 885 F.2d 858, 862 (Fed.Cir.1989), satisfying the importer's due process rights and providing evidence that the liquidation has occurred. *Tropicana,* 909 F.2d at 506.

Proper notice of liquidation was given for the "no change" entries. There is no dispute that computer generated notices were posted. Consistent with its view that the entries had not actually been liquidated, LG questions the validity of the notice given as not the "notices of liquidation" required by 19 C.F.R. § 159.9. As the court finds there to have been decisions to liquidate the "no change" entries, the notices were valid under any reading of the requirements of 19 C.F.R. § 159.9.

Customs' actions satisfy the test for liquidation. The liquidations were illegal, however, because there were suspensions of liquidation in place at the time. As indicated, whether legal or illegal, a liquidation not protested within 90 days becomes final as to all parties. 19 U.S.C. § 1514; *Juice Farms v. United States,* 18 CIT 1037, 1040 (1994)("An importer cannot treat an illegal liquidation as void; rather, the importer must remain vigilant and protest the legality of such a liquidation within 90 days of notice."), *aff'd,* 68 F.3d 1344, 1346 (Fed.Cir. 1995); *see also Omni U.S.A., Inc. v. United States,* 840 F.2d 912, 914–15 (Fed.Cir.1988). The court in *Deringer* noted that 19 U.S.C. § 1514(a)

> contemplates that both the *legality* and correctness of a liquidation be determined, at least initially, via the protest procedure. The wording of this statute [19 U.S.C. § 1514] makes it clear that *any* challenge

to the propriety of a liquidation ... must be through this statute.

593 F.2d at 1020. Accordingly, summary judgment is granted defendant as to the "no change" entries, because of plaintiff's failure to timely protest the liquidations and the resulting lack of jurisdiction under 28 U.S.C. § 1581(a).

### *"Automatic" Liquidations*

As to the "automatic liquidations", the court concludes there were no protestable decisions of an "appropriate customs officer." *See* 19 U.S.C. § 1500. Customs did decide that liquidation would occur automatically in some circumstances. Customs made the decision that:

> [t]hrough the use of automation, Customs could identify those entries nearing the 1 year [sic] to allow for abeyance of liquidation. If not suspended or extended, the automated system would automatically liquidate the entries on the 50th week thus allowing for the possibility of reliquidation (entries liquidated as a matter of law cannot be reliquidated).

*Customs Directive 3700–01 of Mar. 26, 1984, Pl.'s Br.,* at Ex. A. Customs programed the ACS computer system to liquidate entries after 50 weeks, provided there were no suspension or injunction in place. *Id.* The decision of Customs and its appropriate officer was "not to liquidate" whenever a suspension was in place. It appears, however, that a programming error led to the suspension information either not being entered into the computer data base or being entered improperly. Defendant can point to no evidence that anyone at Customs decided to liquidate these entries.

Customs is also required to make an individual decision for each entry. *Micropoint, Inc. v. United States,* 77 Cust.Ct. 135, 426 F.Supp. 569, 570 (Cust.Ct.1976). A general failure to enter suspension information, or properly program for suspensions affecting many entries, is not such a decision. All that occurred here was the triggering of a notice

---

ther, the presumption noted here is not defeated by evidence of purely automatic liquidations, as is the case in regard to the entries discussed hereafter. Dates of liquidation for the "no

change" entries substantially in advance of the fiftieth week (the computer generated automatic liquidation date) preclude the conclusion that the "no change liquidations" were simply automatic.

without any individualized decision of any Customs officer to act on the entries. This is not a liquidation under the statute in effect at the time. Contrary to defendant's argument, *Juice Farms* does not indicate otherwise. 68 F.3d at 1344. Whatever the underlying facts of that case, the Federal Circuit nowhere discusses or disposes of the issue of notices which are triggered automatically by a simple programming error.

▮ Three "automatic liquidation" entries at Stockton, Nos. 86–177354–7, 975–0004615–2, and 975–0004616–0 present some factual issues not present as to the other "automatic liquidation" entries. The computer data for these entries indicate "extensions" ended and the files were actually stamped "liquidated." *Def.'s Br.*, at Ex. C (Brotman Declaration).[10] Why these acts occurred and whether the "appropriate customs officer" decided to liquidate the entries even though a suspension was in place is unknown. Nonetheless, even if the requisite intent to liquidate on the part of an "appropriate customs officer" existed, the purported liquidations would not be recognized by the court, because liquidation of these three entries was enjoined by the court at the time it purportedly occurred.[11] *Compl.*, at Schedule B; *Zenith Elecs.*, Ct. No. 88–07–00488 (CIT Jul. 18, 1988) (preliminary injunction order); *Zenith Elecs.*, Consol. Ct. No. 88–07–00488 (CIT May 19, 1994) (dismissed and preliminary injunction lifted); *Zenith Elecs.*, Ct. No. 90–07–00339 (CIT Aug. 9, 1990) (preliminary injunction order); *Zenith Elecs.*, Consol. Ct. No. 90–07–00339 (CIT Jul. 8, 1994) (dismissed and preliminary injunction lifted).

None of the cases addressing the necessity of protesting illegal liquidations concerns an enjoined liquidation. Had liquidation of the entries actually occurred and not been enjoined, *Juice Farms* would apply to the three Stockton entries, requiring protest within 90 days of even an illegal liquidation. 68 F.3d at 1345. In this case, however, the plaintiff had obtained preliminary injunctions against these liquidations. In the interest of protecting its injunctions and enforcing prior judgments, the court finds that the liquidations in violation of the preliminary injunctions had no legal effect, and need not have been protested within 90 days, as specified by 19 U.S.C. § 1514, to preserve the importer's right to judicial review.

An importer is entitled to rely on a preliminary injunction, or other court order barring liquidation, obtained in an effort to resolve a dispute with Customs or Commerce. The importer's ordinary obligation to watch for notices of liquidation is suspended where the court has issued an order forbidding liquidation. This rule permits an importer to place trust in the judicial review process and to turn full attention to the judicial resolution of the dispute at hand. An agency cannot insist that an importer follow its administrative procedure when the agency's own action violates an injunction the importer obtained against that procedure in the course of a dispute with the agency.

Nothing in precedent or in 19 U.S.C. § 1514 leads to a different conclusion. Moreover, this is clearly the equitable result where the government was involved in settlement negotiations, which would be, at least in part, a sham if the enjoined liquidations were recognized. This is also the correct result as a matter of law. Where liquidation is enjoined by order of the court, liquidation may only be at the rate ultimately approved by the court.[12] *See* 19 U.S.C. § 1516a(c), (e) (1994). To permit liquidation at any other rate violates the clear mandate of the unfair trade laws, not to mention the final judgment of the court entered in the cases in which injunctions were issued.[13] The court there-

10. The remainder of the declaration concerns "no change liquidations."

11. The purported liquidation dates of the other entries, except for one deemed liquidation entry in New York, preceded the relevant injunction dates. The injunction would not apply to entries which actually were liquidated prior to the injunction's effective date.

12. *See e.g. Zenith Elecs.*, Ct. No. 90–07–0039 (CIT Jul. 8, 1994) (order lifting injunction and stating "defendant is hereby authorized to liquidate such entries in accordance with the final results ... published at 55 Fed. Reg. 26,225 (June 27, 1994).").

13. The parties did not address the preclusive effects of the prior judgments on entries undisputedly unliquidated at the time of the injunctions. The court, however, raised the issue

fore finds these three ostensible "automatic liquidations" of no legal effect, if they did occur.[14]

Plaintiff prevails as to all twenty-seven "automatic liquidation" entries. Jurisdiction lies under 28 U.S.C. § 1581(i) because no protestable liquidations existed, and this is an action to compel liquidation. Liquidation should now occur in accordance with Commerce's instruction and the prior judgments of this court.

*Deemed Liquidation*

■ The court reaches the same result in the case of the two deemed liquidations. As with the "no change liquidation" and "automatic liquidation" inquiries above, the court approaches the question as a two-step inquiry, asking first whether liquidations occurred and then, if so, whether they were without legal effect, such as to obviate plaintiff's need to preserve its rights to judicial review by protesting within 90 days of notice of liquidation. In the case of the two deemed liquidations, the court finds favorably for the plaintiff as to the first step and therefore need not reach the second step. The liquidations did not in fact occur.

Liquidation is deemed to have occurred by operation of law one year after entry. 19 U.S.C. § 1504(a) (1988). Exceptions occur in cases of extension, suspension or court order. 19 U.S.C. § 1504(b)(2)(1988).[15] Here liquidation was suspended. Thus, as a matter of law, no deemed liquidation of New York entry No. 84–916368–7 or Los Angeles entry No. 86–445948–6 occurred.[16] Although LG received erroneous notice of liquidation of these entries, plaintiff's claim may be heard, because LG did not have to protest within 90 days, as specified by 19 U.S.C. § 1514, to preserve its right to judicial review. The computer-generated notices of deemed liquidation are invalid and legally inconsequential, as deemed liquidation can occur only by operation of law. An erroneous, computer-generated notice that deemed liquidation has occurred—when in fact such liquidation was prevented by suspension—has no effect on the deemed liquidation of LG's entries. *Cf. Pagoda Trading Co. v. United States*, 9 CIT 407, 410 n. 7, 411, 617 F.Supp. 96, 98 n. 7, 99–100 (1985), *aff'd*, 804 F.2d 665, 669 (Fed.Cir. 1986) (19 U.S.C. § 1504 designed to avoid unauthorized liquidations; notice does not create suspension of liquidation).

■ Notwithstanding Customs' provision for posting notice of deemed liquidation, informing importers that a deemed liquidation has occurred, 19 C.F.R. § 159.9(c)(2), as indicated, deemed liquidation itself occurs by operation of law. 19 U.S.C. § 1504(a). Where a liquidation has occurred by operation of law, notice starts the clock for the protest period, 19 C.F.R. § 159.9(c)(2)(iii), but the regulations specify that the notice be "dated as of the date of expiration of the statutory period," 19 C.F.R. § 159.9(c)(2)(ii). Such notice may be posted any time "within a reasonable period after each liquidation by operation of law." 19 C.F.R. § 159.9(c)(2)(ii). Accordingly, erroneous notice cannot create a deemed liquidation. Without the expiration of the statutory period, there is no date

during a conference call with the parties on December 22, 1997. The government could have raised the prior liquidation issue at the time of entry of the earlier judgments.

**14.** As plaintiff did not raise the issue, the court will not begin the unwieldy process of determining whether the violations of the court order involved contempt. The "liquidations" at Stockton were likely an oversight. The court has greater concern that the subsequent act of insisting on the legal benefits of an enjoined liquidation itself may be contemptuous, or perhaps in bad faith, given the settlement reached and judgments entered. Rather than resolve such issues at this time, the court simply finds the liquidations to have no legal effect.

**15.** Where the unfair trade laws require suspension, no deemed liquidation occurs. Subsection (a) of the statute was amended by Pub.L. 103–182, § 641(1)(A) (1993) to make this clear, but the entire statutory scheme, including both the prior 19 U.S.C. § 1504 and the unfair trade laws required the same result. *See* H.R. 103–361(I), *reprinted at* 1993 U.S.C.C.A.N. 2552, 2688–89. This has always been reflected in the regulatory notice provisions, 19 C.F.R. § 159.12(b), (c) (1997), which require action by Customs to accomplish an "extension" of liquidation but recognize "suspensions" occur as soon as the appropriate Commerce determination is made.

**16.** Apparently, the New York "deemed liquidation" was enjoined by the court and would also fall into the same category as the Stockton "automatic liquidation" entries.

to be noticed. As the statutory period for protest never began to run, plaintiff may bring suit under 28 U.S.C. § 1581(i) to compel liquidation in accordance with the prior order of the court.

In sum, the two entries purportedly "deemed liquidated" were not, as a matter of law, and may only be liquidated at the Commerce rate, as approved by the court. The requirements of the statute for deemed liquidation could not have occurred at the time asserted by Customs because of the suspensions in place. As to these two entries, the court grants LG's motion for summary judgment, concluding that the entries should be liquidated at the rate determined by Commerce and approved by the court, as set forth in its prior judgments.

*Interest* [17]

Interest is payable on the difference between duties deposited and liquidated duty amounts. *See* 19 U.S.C. § 1677g(a) (1997); 19 C.F.R. § 353.24(a) (1995). Interest is due on "overpayments ... of amounts deposited on merchandise entered." 19 U.S.C. § 1677g(a). Thus, interest is owed on the alleged "automatic liquidation" and "deemed liquidation" entries because they will be ordered liquidated at the rate selected by Commerce, and an overpayment will be established on a per-entry basis at liquidation.

Contrary to plaintiff's contention, Customs' regulation, 19 C.F.R. § 353.24, providing for the calculation of interest based on the duty "assessed" at liquidation, does not conflict with the statutory scheme. The interest obligation is predicated on liquidation with a resulting determination of overpayment, which can only be established in this case when 1) Commerce has rendered its determination, and 2) the liquidation at the rate selected reflects Commerce's choice. It is not until liquidation that the exact amount owing on a per entry basis is known. The

Commerce order does not contain a calculation on an entry-by-entry basis. Where liquidation in the amount of the antidumping duty deposit has become final, there is no interest obligation.

## Conclusion

In the case of the alleged "deemed liquidations" and "automatic liquidations," the court has jurisdiction. The entries shall be liquidated at the rates ordered by Commerce and approved by the court, with interest, as provided by law. In the case of the "no change liquidations," the liquidations, while illegal, were not timely protested. The court therefore lacks jurisdiction over such entries. Judgment shall enter accordingly.

## JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

**IT IS HEREBY ORDERED:** that plaintiff's motion for summary judgment is granted, in part, and defendant's motion for summary judgment is granted, in part. Summary judgment is granted defendant as to the 25 "no change" liquidation entries. No interest is due plaintiff for these entries. Summary judgment is granted plaintiff as to the 27 "automatic" and 2 deemed liquidation entries. Customs is hereby ordered to liquidate these entries at the rate determined by Commerce and to refund the difference between the duty deposited and the duty owed, with interest.

---

17. The parties agree that as to all entries the court has jurisdiction over the interest issue under 28 U.S.C. § 1581(i). The court does not decide whether that is the case as to plaintiff's claims for interest on entries which will remain

liquidated without refunds, as the court does not grant relief on those entries.