NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALDEN LEEDS INC.,**
*Plaintiff-Appellee,*

v.

**UNITED STATES,**
*Defendant-Appellant,*

---

2011-1280

---

Appeal from the United States Court of International Trade in case No. 09-CV-0476, Judge Richard K. Eaton.

---

Decided: March 8, 2012

---

JOSEPH B. FIORENZO, Sokol, Behot & Fiorenzo, of Hackensack, New Jersey, argued for plaintiff-appellee.

ARLENE PIANKO GRONER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant appellant. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BARBARA S. WILLIAMS, Attorney in Charge, United States Department of Justice, International Trade

Field Office, of New York, New York. Of counsel on the brief was EDWARD N. MAURER, Deputy Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

---

Before LINN, PROST, and O'MALLEY, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

The government appeals from the United States Court of International Trade's final judgment which: (1) denied the government's motion to dismiss for lack of subject matter jurisdiction; (2) ordered the United States Customs and Border Protection ("Customs") to reliquidate the twelve entries of chlorinated isocyanurates at issue at the final duty rate of 4.07%; and (3) ordered the government, through Customs, to provide Alden Leeds Inc. ("Alden Leeds") with a refund of the difference between the deposited amount and the final duty rate, plus interest. *See Alden Leeds Inc. v. United States*, 721 F. Supp. 2d 1322 (Ct. Int'l Trade 2010) (denying motion to dismiss); Judgment, *Alden Leeds Inc. v. United States*, No. 09-00476 (Ct. Int'l Trade Feb. 2, 2011), ECF No. 55 (final judgment on appeal). Because we conclude that the Court of International Trade lacked subject matter jurisdiction, we reverse its jurisdictional holding, vacate its judgment on the merits, and remand for dismissal of the complaint.

## BACKGROUND

On June 25, 2005, the United States Department of Commerce ("Commerce") published an antidumping duty order for chlorinated isocyanurates ("isos") from Spain. The order provided that isos imported from Aragonesas Delsa, S.A. would receive an antidumping duty margin of 24.83%. *Chlorinated Isocyanurates from Spain: Notice of*

*Antidumping Duty Order*, 70 Fed. Reg. 36,562, 36,563 (Dep't of Commerce June 24, 2005). On July 2, 2007, Aragonesas Industrias y Energia S.A., the successor-in-interest to Aragonesas Delsa, S.A. (collectively, "Aragonesas") filed a request for an administrative review of the antidumping order. Commerce subsequently issued notice that it was initiating administrative review of the antidumping and countervailing duty order for imports from Aragonesas for the period from June 1, 2006 through May 31, 2007 ("the period of review"). *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 72 Fed. Reg. 41,057 (Dep't of Commerce July 26, 2007).

Alden Leeds is an American importer of goods used in connection with its business of manufacturing swimming pool chemicals. Between June 1, 2006 and May 31, 2007, Alden Leeds imported twelve entries of isos from Aragonesas. Pursuant to the antidumping order, upon entry of its shipments, Alden Leeds made a cash deposit with Customs covering the estimated antidumping duty rate of 24.83% (roughly $400,000). Customs suspended liquidation of those entries pending the outcome of the administrative review.

On February 7, 2008, Commerce sent a message to Customs, instructing Customs to liquidate all entries of isos from Spain for the period of June 1, 2006 to May 31, 2007, except for entries from "Argonesas Industrias Y Energia S.A."[1] Joint Appendix ("J.A.") 167 (Message No.

---

[1] Aragonesas was misspelled in Commerce's message as "Argonesas." It is unclear what effect, if any, this spelling error had on Customs' decision to liquidate the entries. For its part, the trial court found that Message No. 8038217 provided "clear instructions" not to liquidate Alden Leeds' entries and that Customs' liquidation was "obviously a mistake." *Alden Leeds*, 721 F. Supp. 2d at

8038217). Although the suspension of liquidation on entries from Aragonesas remained in effect pending the outcome of the administrative review, Customs posted a Bulletin Notice of liquidation on April 25, 2008. In the Notice, Customs listed the twelve entries of isos that Alden Leeds imported during the relevant period along with a handwritten notation that those entries were deemed liquidated on January 26, 2008 under 19 U.S.C. § 1504(d).[2] J.A. 170 ("19 USC 1504(d) Deem Liq 1/26/08."). Alden Leeds did not protest either the posting of the Bulletin Notice or the deemed liquidation of the entries.

On December 30, 2008, Commerce published the final results of its administrative review, finding that the isos imported from Spain during the period of review was subject to an antidumping duty rate of 4.07% – a rate substantially lower than the estimated duty rate of 24.83% that Alden Leeds previously deposited. *See Chlorinated Isocyanurates from Spain: Final Results of Antidumping Duty Administrative Review*, 73 Fed. Reg. 79,789, 79,790 (Dep't of Commerce Dec. 30, 2008). Pursuant to the final results, on March 4, 2009, Commerce sent a message instructing Customs to liquidate isos imported

---

1326, n.4. In its reply brief, the government argues that it is "not 'obvious' that Customs considered the spelling difference to be insignificant, nor should such an assumption be made, as the addition or subtraction of a single letter in a name may, in reality, critically reference different companies." Appellant's Reply 24. Because, as discussed below, jurisdiction does not depend on the accuracy of Customs' decision to liquidate, we need not resolve this issue on appeal.

[2] The handwritten "deemed liquidation" annotation on the Bulletin Notice also encompassed eleven entries involving other importers. Those entries are not at issue here.

from Aragonesas during the period of review at the final antidumping rate.  J.A. 226-27 (Message No. 9063201).

Alden Leeds, through counsel, immediately sought a refund of the difference between the estimated deposit rate and the final rate determined in the review.  It was at this point – in approximately February 2009 – that Alden Leeds first learned that its twelve entries had been deemed liquidated at the deposit rate on January 26, 2008.  First Amended Complaint, *Alden Leeds Inc. v. United States*, No. 09-00476 (Ct. Int'l Trade Feb. 2, 2011), ECF No. 7 at 3.

In November 2009, Alden Leeds filed suit in the Court of International Trade contesting Customs' deemed liquidations and seeking to recover the difference between the deposit rate (24.83%) and the final assessment rate (4.07%).  In its complaint, Alden Leeds asserted jurisdiction pursuant to 28 U.S.C. § 1581(i), and alleged that Customs wrongfully and prematurely liquidated Alden Leeds' entries of isos in violation of specific suspension of liquidation instructions from Commerce.  *Id.* at 1, 5.

In response, the government filed a motion to dismiss for lack of jurisdiction or, in the alternative, for failure to state a claim.  In the motion, the government argued that jurisdiction under § 1581(i) was not available because Alden Leeds could have filed a protest to challenge Customs' deemed liquidation within 180 days of the date of the deemed liquidation or the date that Customs posted the Bulletin Notice.  If Customs denied that protest, Alden Leeds then could have challenged the denial in the Court of International Trade pursuant to 28 U.S.C. § 1581(a).  Because Alden Leeds failed to follow this statutory procedure, the government contended that the trial court could not exercise its residual jurisdiction under § 1581(i).

The trial court denied the government's motion to dismiss, finding that, because there was an order suspending liquidation, Customs' posting of the Bulletin Notice was a "legal nullity," and not a protestable event. *Alden Leeds*, 721 F. Supp. 2d at 1332. Because Alden Leeds was not required to protest Customs' "legally inconsequential" Bulletin Notice, judicial review under § 1581(a) was not available, and the court concluded that it possessed residual jurisdiction under 28 U.S.C. § 1581(i). *Id.*

On February 2, 2011, the trial court entered final judgment that: (1) there were "no merits issues remaining to be resolved" by the court; (2) the court possessed subject matter jurisdiction over the action; and (3) Customs was required to reliquidate the twelve entries of isos at the final duty rate of 4.07% and refund the difference between Alden Leeds' estimated deposits and the final duty rate, plus interest. Judgment, *Alden Leeds*, No. 09-00476 (Ct. Int'l Trade Feb. 2, 2011), ECF No. 55. The government timely appealed.

## DISCUSSION

The sole issue on appeal is whether the Court of International Trade correctly concluded that it had jurisdiction to consider Alden Leeds' claims. Because jurisdiction is an issue of law, we review the trial court's determination *de novo*. *Int'l Custom Prods. v. United States*, 467 F.3d 1324, 1326 (Fed. Cir. 2006).

The Court of International Trade's jurisdiction is set forth in 28 U.S.C. § 1581. While § 1581 subsections (a) – (h) identify specific actions over which the Court of International Trade has jurisdiction, subsection (i) provides a "catch-all" jurisdictional provision. *See Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1291-92 (Fed. Cir. 2008). In subsection 1581(a), which governs the court's

jurisdiction to review Customs' treatment of protests, "Congress set an express scheme for administrative and judicial review of Customs' actions." *Int'l Custom Prods.*, 467 F.3d at 1326. Under this statutory scheme, an aggrieved party must first file a protest with Customs under 19 U.S.C. § 1514, before it can file suit in the Court of International Trade under § 1581(a) to contest the denial of that protest. *Id.* at 1326-27; *see also Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 976 (Fed. Cir. 1994) (noting that "an aggrieved party [must] file a protest under section 1514, which Customs must either grant or deny, before the party may sue under section 1581(a)").

Here, Alden Leeds did not file a protest under § 1514(a), and did not assert jurisdiction under § 1581(a). Instead, Alden Leeds contended, and the trial court agreed, that jurisdiction existed under § 1581(i). In relevant part, § 1581(i) provides, that, in addition to the jurisdiction set forth in subsection (a):

> the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in . . . subsection[] . . . (a) . . . of this section.

28 U.S.C. § 1581(i)(4). This court has described § 1581(i) as a "residual" grant of jurisdiction that "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002) (citation and internal quotation omitted). Accordingly, a party asserting jurisdiction under § 1581(i) bears the burden of demonstrating

that another subsection is either unavailable or manifestly inadequate. *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987).

On appeal, the government argues that the trial court lacked jurisdiction to address Alden Leeds' complaint under § 1581(i). Specifically, the government argues that: (1) Alden Leeds could have timely protested Customs' Bulletin Notice of deemed liquidations under § 1514(a), and then subsequently sought review under § 1581(a); (2) because Alden Leeds failed to timely protest, Customs' Bulletin Notice of deemed liquidations became final and conclusive under § 1514(a)(5); (3) the trial court's decision conflicts with Federal Circuit precedent requiring an importer to protest even an erroneous deemed liquidation; and (4) the remedy available under § 1581(a) was not "manifestly inadequate."

In response, Alden Leeds argues that, because Customs' posting of the Bulletin Notice was a "legal nullity," there was no protestable event that would have triggered jurisdiction under § 1581(a). Accordingly, Alden Leeds contends, jurisdiction was proper under § 1581(i). We disagree. For the reasons explained below, we conclude that the trial court lacked jurisdiction under § 1581(i) because: (1) jurisdiction was available under 28 U.S.C. § 1581(a); and (2) Alden Leeds has not shown that the remedy available under § 1581(a) was "manifestly inadequate."

A.  Jurisdiction Was Available Under 28 U.S.C. § 1581(a).

As noted, denial of a protest under 19 U.S.C. § 1514 is a prerequisite to establishing jurisdiction under 28 U.S.C. § 1581(a). *Playhouse Import & Export, Inc. v. United States*, 843 F. Supp. 716, 719 (Ct. Int'l Trade 2994). Section 1514(a) identifies "the decisions of Customs that may be the subject of protests." *Fujitsu*, 283 F.3d at 1371.

In relevant part, § 1514(a)(5) provides that Customs' decisions "as to . . . the liquidation or reliquidation of an entry . . . including the liquidation of an entry, pursuant to either [19 U.S.C. § 1500 or 1504] . . . shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section." A protest must be filed within 180 days after the liquidation date or the "date of the decision as to which protest is made." 19 U.S.C. § 1514(c)(3).

By its terms, § 1514(a) specifically identifies decisions "as to" deemed liquidations under 19 U.S.C. § 1504 as protestable decisions. *See Koyo Corp. v. United States*, 497 F.3d 1231, 1243 (Fed Cir. 2007) ("Like an unlawful actual liquidation, the deemed liquidation can be protested and the final review results can have effect if the importer timely invokes its post-liquidation protest remedy under 19 U.S.C. § 1514."). Section 1504(d), which governs deemed liquidation of entries, provides, in part, that:

> [W]hen a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry . . . within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. Any entry . . . not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

19 U.S.C. § 1504(d). In other words, once the suspension of liquidation is removed, § 1504(d) gives Customs six months to liquidate the entries at issue. If the entries remain unliquidated for six months after the suspension

of liquidation is lifted, they are "deemed liquidated" by operation of law at the rate of duty the importer claimed upon entry. *See Koyo Corp.*, 497 F.3d at 1236 ("[T]he rate of duty that applies to a deemed liquidation under § 1504(d) is the rate of duty that the importer claims on the entry papers and deposits at the time of entry."). Accordingly, this court has held that, for a deemed liquidation to occur under § 1504(d), three preconditions must be met: "(1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice." *Fujitsu*, 283 F.3d at 1376.

Here, the trial court concluded that Customs' Bulletin Notice of deemed liquidations while the suspension of liquidation was in effect was a "legal nullity" – not a protestable event. *Alden Leeds*, 721 F. Supp. 2d at 1332. In reaching this decision, the trial court noted that: (1) "deemed liquidation occurs solely by operation of law"; and (2) none of the preconditions necessary for deemed liquidation had occurred prior to Customs posting the Bulletin Notice. *Id.* at 1330-32. As a result, the court concluded that "Alden Leeds was not required to protest Customs' legally inconsequential Bulletin Notice." *Id.* at 1332. Based on the statutory framework and our prior case law, we disagree.

This court has stated that, "all liquidations, whether legal or not, are subject to the timely protest requirement. Without timely protest, all liquidations become final and conclusive under 19 U.S.C. § 1514." *Juice Farms, Inc. v. United States,* 68 F.3d 1344, 1346 (Fed. Cir. 1995). In *Juice Farms*, Customs erroneously liquidated twenty entries of orange juice while suspension orders were in effect. *Id.* at 1345. Because Commerce had ordered

suspension of liquidation pending administrative review, the importer did not check for bulletin notices, and failed to file a timely protest. *Id.* On appeal, this court rejected the importer's equitable tolling argument and found that, although there was a suspension of liquidation, Customs posted public bulletin notices of its liquidations, and those notices supplied sufficient notice to trigger the ninety-day protest window. *Id.* at 1346. Because the importer's protest was untimely, the liquidations became "final and conclusive against all parties." *Id.* In reaching this decision, we noted that the importer: (1) "bears the burden to check for posted notices of liquidation and to protest timely"; and (2) "cannot circumvent the timely protest requirement by claiming that its own lack of diligence requires equitable relief under 28 U.S.C. § 1581(i)." *Id.* Because the importer could have challenged the legality of the admittedly premature liquidations by filing a protest under 19 U.S.C. § 1514(a), and then sought judicial review under § 1581(a), it was not entitled to assert jurisdiction under § 1581(i).

Alden Leeds argued, and the trial court agreed, that *Juice Farms* is distinguishable because it involved actual liquidations rather than deemed liquidations.[3] Specifi-

---

[3] The trial court relied instead on *LG Electronics U.S.A., Inc. v. United States*, 991 F. Supp. 668 (Ct. Int'l Trade 1997), for the proposition that Customs' "erroneous notices of deemed liquidation [are] invalid and of no legal consequence." *Alden Leeds*, 721 F. Supp. 2d at 1331 (citing *LG Elecs.*, 991 F. Supp. at 676). In *LG Electronics*, however, the Court of International Trade had previously entered preliminary injunctions against liquidation of the disputed entries, and the court noted that the "importer's ordinary obligation to watch for notices of liquidation is suspended where the court has issued an order forbidding liquidation." 991 F. Supp. at 671, 675. Both this court and the Court of International Trade have distinguished cases where Customs violated an *agency*-ordered suspen-

cally, the trial court noted that, while Customs "has the authority to take the steps that result in an actual liquidation decision," it has "no authority to effect a deemed liquidation, and can make no finding or determination as to whether or not a deemed liquidation has occurred." *Alden Leeds*, 721 F. Supp. 2d at 1330-31. Because Customs could not create a deemed liquidation by simply posting a bulletin notice, the trial court stated that, "here, unlike in *Juice Farms*, no liquidation took place or could have taken place, and thus no protestable event existed for plaintiff to contest." *Id.* at 1330.

While it is true that *Juice Farms* involved actual liquidations, in a subsequent decision, not cited by the trial

---

sion of liquidation from cases involving violation of a *court*-ordered injunction preventing liquidation. *See Cemex, S.A. v. United States*, 384 F.3d 1314, 1324 n.13 (Fed. Cir. 2004) (distinguishing *LG Electronics* on grounds that it involved "liquidations in violation of an injunctive order"); *Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1162, 1167-69 (Ct. Int'l Trade 2004) ("Put simply, a court-ordered suspension of liquidations creates a whole different ball game apart from the standard protest and judicial review framework provided by Congress. Liquidations in violation of a valid court order have no legal effect, and it is futile to place a legal nullity within Congress' statutory scheme.") (internal citations and quotations omitted). Where, as here, liquidation occurred during an agency-ordered suspension of liquidation, the liquidation must be protested under § 1514. *See Allegheny Bradford*, 342 F. Supp. 2d. at 1167 ("Recognizing the import of § 1514, the courts rejected the proposition that, where a Customs decision violated an existing agency order, the decision was void and the party was able to bypass the requirements of the protest procedure.") (citations omitted). Because this case did not involve liquidation in violation of a court-ordered suspension of liquidation, we find that the trial court's reliance on *LG Electronics* was misplaced.

court, we explained that the same rationale applies to deemed liquidations. *Cemex, S.A. v. United States*, 384 F.3d 1314, 1325 n.14 (Fed. Cir. 2004). In fact, in *Cemex*, this court found it unnecessary to address whether Customs' posting of a notice could constitute a deemed liquidation, because "Customs' decision to acknowledge that liquidation, deemed or otherwise, had occurred falls within the purview of section 1514(a) and is, therefore, 'final and conclusive upon *all* persons.'" *Id.* at 1323 (emphasis in original).

In *Cemex*, entries of cement from Mexico were subject to a preliminary antidumping duty rate of 56.94%, and were suspended pending review. 384 F.3d at 1316. In March 1998, Commerce instructed Customs to liquidate the entries at the rate of 106.846%. Commerce sent these instructions to Customs via email, which Customs posted on a non-public bulletin board. *Id.* at 1316. Although some entries were liquidated at the 106.846% rate specified in the email, other entries were not liquidated pursuant to the non-public instructions. *Id.* at 1316-17. Roughly three years later, in April 2001, Customs posted public bulletin notice that certain remaining entries were deemed liquidated six months after March 1998, and liquidated those entries at the preliminary duty rate of 56.94%, rather than the final rate of 106.846%. *Id.* at 1317.

On appeal, this court held that the non-public March 1998 email was premature and otherwise ineffective to trigger the six-month deemed liquidation period under § 1504(d). *Id.* at 1321. We found, however, that Customs' erroneous notice of deemed liquidation became final and conclusive because the importer failed to timely protest. Specifically, we found that: (1) Customs makes a "decision" within the meaning of § 1514(a) when it posts a bulletin notice of liquidation; and (2) even when that

decision is incorrect, it becomes final if no protest is filed. *See id.* at 1324-25 ("Following an inquiry into the legal posture of the [entries], Customs chose to effect their liquidation by posting the Bulletin Notices. More than passive or ministerial, Customs' actions constitute a 'decision' within the context of section 1514(a)."). Therefore, after *Cemex*, it is clear that Customs' decision liquidate – even where that decision is erroneous – "falls within the ambit of section 1514(a)(5), which shields such decisions from challenge, without regard for their legality." *Id.* at 1324.

We are bound by the decisions in *Cemex* and *Juice Farms*, and find that they are dispositive in this case. Although there was an agency-ordered suspension of liquidation while the administrative review was pending, Customs made a decision to post a Bulletin Notice of deemed liquidations. Under § 1514(a), all of Customs' "decisions" as to liquidations – including deemed liquidations under § 1504(d) – "shall be final and conclusive" unless protested. And, although the entries were not actually deemed liquidated by operation of law, because the prerequisites for deemed liquidation had not occurred, Customs' decision to post the Bulletin Notice and decision to treat the entries as liquidated were protestable decisions under § 1514(a), regardless of their accuracy. *See Cemex*, 384 F.3d at 1325 n.14 ("Customs' posting of bulletin notices of liquidations constitutes a 'decision' under section 1514(a)."). In other words, the mere fact that the entries were not actually deemed liquidated is not controlling, and does not excuse Alden Leeds' obligation to file a protest.

Based on the foregoing, we find that Alden Leeds could have challenged Customs' actions by filing a timely protest under § 1514, and then, if necessary, could have

challenged any denial by filing suit in the Court of International Trade under 28 U.S.C. § 1581(a).

B.   The Remedy Available Under § 1581(a) Was Not "Manifestly Inadequate."

Because we find that Alden Leeds could have brought suit under § 1581(a), the only way it can invoke jurisdiction under the catch-all provision in § 1581(i) is if it can show that the remedy available under § 1581(a) would have been "manifestly inadequate." *See Miller & Co.*, 824 F.2d at 964. As we have noted, however, "mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." *Id.*

Alden Leeds has not shown that the relief set forth in § 1581(a) would have been inadequate, let alone manifestly so. Instead, the record reveals that Customs provided Bulletin Notice of its decision to treat the entries as deemed liquidated. If Alden Leeds had timely protested the Bulletin Notice, it would have been able to challenge any adverse decision in the Court of International Trade, on grounds that the Bulletin Notice had been posted prematurely, or otherwise. As we have previously noted, "a remedy is not inadequate simply because appellant failed to invoke it within the time frame it prescribes." *Juice Farms*, 68 F.3d at 1346 (citation and quotation omitted).

Although the Bulletin Notice was premature, Alden Leeds bore the burden of examining it and filing a protest within the statutory time period. *See Juice Farms*, 68 F.3d at 1346 ("[T]he importer[] bears the burden to check for posted notices of liquidation and to protest timely."). While we are not unsympathetic to the burden this places on importers, the governing statutes provide a specific procedure for protesting Customs' liquidation decisions,

and our prior case law is clear that this procedure applies with equal force to erroneous liquidation decisions.[4] Because we find that Alden Leeds had an adequate remedy available under § 1581(a), but failed to pursue it, jurisdiction under § 1581(i) is unavailable.

As a final matter, because we conclude that the Court of International Trade lacked jurisdiction over this case, we have no jurisdiction to address the merits of the court's reliquidation decision. *See Int'l Custom Prods.*, 467 F.3d at 1328 (citing *Glasstech, Inc. v. Ab Kyro Oy*, 769 F.2d 1574, 1577 (Fed. Cir. 1985) ("[A]n appellate court has no jurisdiction to decide the merits of the case if the court from which the appeal was taken was without jurisdiction.")). Accordingly, we vacate the trial court's final judgment on the merits.

## CONCLUSION

For the foregoing reasons, and because we find that Alden Leeds' remaining arguments are without merit, the final judgment of the Court of International Trade is reversed with respect to jurisdiction, vacated on the merits, and the case is remanded with instructions to dismiss the complaint for lack of subject matter jurisdiction.

## REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED

---

[4] As we noted in *Cemex*, any concerns about the statutory scheme under which Commerce and Customs operate must be addressed to Congress. *See Cemex*, 384 F.3d at 1325 (finding that the domestic producers bore the burden of "monitoring the implementation of antidumping duties" and that, "[u]nfair as that may seem, the proper forum for remedying the harshness of the statute is Congress, not this court").