Slip Op. 06-107

UNITED STATES COURT OF INTERNATIONAL TRADE

————————————————————————
                                              :
AMERICAN NATIONAL FIRE                        :
INSURANCE COMPANY,                            :
                                              :
             Plaintiff,                       :
                                              :          Before: Judith M. Barzilay, Judge
       v.                                     :          Court No. 00-00022
                                              :
UNITED STATES,                                :
                                              :
             Defendant.                       :
                                              :
————————————————————————

OPINION

[Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted.]

Dated: July 18, 2006

*Law Offices of Barry M. Boren (Barry M. Boren)* for Plaintiff American National Fire Insurance Co.

*Peter D. Keisler*, Assistant Attorney General; (*James A. Curley*), Civil Division, Commercial Litigation Branch; (*Barbara S. Williams*), Attorney in Charge, International Trade Field Office; *Aimee Lee*, International Trade Field Office; *John J. Mahon*, International Trade Field Office, United States Department of Justice; *Yelena Slepak*, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of counsel, for Defendant United States.

       BARZILAY, JUDGE:  This case recites the unhappy history of a small American importer and its surety while it attempted to grow its business by importing a product it had never imported before to serve what it hoped would be an increasing market.  Instead, it found the transaction subject to the confusing interactions of three government agencies regulating international trade.  Unfortunately, the importer's efforts ran afoul of an unusually complicated antidumping case - one whose order was ultimately revoked by the Department of Commerce

("Commerce") because of the criminal behavior of some United States industry executives.

This relatively simply matter could have been resolved at several points in the administrative proceedings leading up to the filing of the summons and complaint in this Court. Plaintiff surety and its lawyer valiantly attempted to get action from a number of Customs bureaucrats at the United States Customs Service ("Customs"),[1] both at the relevant port and at Customs Headquarters, to no avail. The court strongly suggested a settlement, which the parties were unable to reach. As a result, the Government has unjustly enriched itself at the expense of the surety, and the court cannot undo the damage, as will be explained.

Plaintiff American National Fire Insurance Company ("ANF") has filed suit against Customs' denial of its timely-filed protest against Customs' assessment of antidumping ("AD") duties on a shipment of ferrosilicon from the People's Republic of China ("China"). *See* Pl.'s Br. 1. ANF was the surety for Amlon Metals, Inc. ("Amlon"), the firm that imported the ferrosilicon at issue. ANF asserts that it is not liable for the AD duties because Customs improperly denied its timely-filed protest. Customs asserts that its denial was proper. Both parties have filed for summary judgment. For the reasons discussed below, the court must grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.

### Procedural History

On January 21, 1993, Commerce issued a final determination that ferrosilicon from China was being sold below fair value. *Final Determination of Sales at Less Than Fair Value: Ferrosilicon from the People's Republic of China*, 58 Fed. Reg. 5,356-03 (Dep't of Commerce

---

[1] Effective March 1, 2003, the United States Customs Service was renamed the Bureau of Customs and Border Protection of the United States Department of Homeland Security.

Jan. 21, 1993). On March 11, 1993, Commerce issued an AD order on imports of ferrosilicon

from China, with an accompanying AD duty rate of 137.73% *ad valorem*. *Antidumping Duty*

*Order: Ferrosilicon from the People's Republic of China*, 58 Fed. Reg. 13,448-01 (Dep't of

Commerce Mar. 11, 1993).

On November 17, 1997, Amlon's ferrosilicon purchase from China was entered at the

port of Seattle. *See* Pl.'s Ex. B. The Entry Summary form described the product as "Ferroalloys,

Other" and classified it under the corresponding Harmonized Tariff Schedule of the United States

("HTSUS") subheading 7202.29.0050. *See* Pl.'s Ex. B. Ferrosilicon classified under this

provision was subject to the March 11, 1993, AD order. For reasons that are unclear, Customs

did not assess the 137.73% duty at the time of entry. *See* Pl.'s Ex. B.

Customs faxed a Request for Information to Amlon on March 3, 1998, asking for

supporting documents to verify the classification of the merchandise. *See* Pl.'s Ex. M. It appears

that Customs sent the fax after attempts to contact Amlon through the mail failed because

Customs had an incorrect, older address for Amlon on file. *See* Pl.'s Br. 7; Def.'s Br. 36. Amlon

moved to its current address in July 1995, more than two years before events surrounding the

instant case began.[2] On March 21, 1998, Customs sent Amlon and ANF notice that liquidation

of the entry was being suspended. Customs' records show that it mailed Amlon's notice again to

---

[2] Customs asserts that Amlon did not give notice of an address change until February 4, 1999, when Amlon and ANF executed a Rider to Customs Bond Form C.F. 301. *See* Def.'s Br. 36; Pl.'s Ex. P. ANF alleges that Customs had actual notice of Amlon's correct address as early as 1996, when ANF filed the original Customs bond with Customs, and because Amlon's correspondence with Customs used Amlon's correct address, as did the Entry Summary form for the entry at issue. *See* Pl.'s Br. 7-8; Pl.'s Ex. G.

the outdated address, though it mailed ANF's notice to the correct address. *See* Def.'s Ex. 1.

Amlon claims that it never received the notice of suspension. *See* Pl.'s Br. 18. On March 23,

1998, Amlon replied to Customs' March 3, 1998, Request for Information. *See* Pl.'s Ex. N.

On September 14, 1998, Commerce issued instructions to Customs to liquidate entries of

ferrosilicon from China that entered the United States between March 1, 1997, and February 28,

1998, in accordance with the AD order. Dep't of Commerce Message No. 8257111; Def.'s Ex.

2. Nine days later, Customs issued a Notice of Action[3] to Amlon demanding that Amlon submit

a statement certifying that Amlon had not been reimbursed for any antidumping duties pursuant

to 19 C.F.R. § 351.402(f)(2). Customs sent this notice to Amlon, but again used the incorrect

address. *See* Pl.'s Ex. R. While it is unclear whether Amlon or ANF received the Notice of

Action, Customs cancelled the Notice on October 26, 1998, before Amlon or ANF took any

action. *See* Pl.'s Br. 8; Pl.'s Ex. R. Customs provided no explanation for cancelling the Notice

and did not issue any other Notice of Action to Amlon or ANF. Per Commerce's September 14,

1998, liquidation instructions, Customs liquidated Amlon's entry with a duty rate of 137.73% *ad*

*valorem* on November 20, 1998. *See* Def.'s Br. 1.

---

[3] The Notice of Action was a Customs Form 29. 19 C.F.R. § 152.2 states that notification to importers of increased duties shall be sent using Customs Form 29 and reads in pertinent part:

> If the port director believes that the entered rate or value of any merchandise is too low . . . and the estimated aggregate of the increase in duties on that entry exceeds $15, he shall promptly notify the importer on Customs Form 29, specifying the nature of the difference on the notice. Liquidation shall be made promptly and shall not be withheld for a period of more than 20 days from the date of mailing of such notice unless in the judgment of the port director there are compelling reasons that would warrant such action.

19 C.F.R. § 152.2.

On March 19, 1999, Customs made a demand on ANF to pay the AD duties assessed against the entry. *See* Def.'s Br. 2. On April 27, 1999, ANF filed a timely protest against this demand for payment, claiming that the liquidation, suspension, and classification of the merchandise were improper. *See* Pl.'s Ex. Q. ANF asserts that it had an oral follow-up discussion with Customs on June 29, 1999, about an International Trade Commission ("ITC") investigation into the original AD order on ferrosilicon from China. *See* Pl.'s Br. 11-12. In its brief, ANF claims that it discussed the liquidation and classification claims and asked Jerry Malmo, the Seattle Import Specialist, to withhold a decision on the protest because it appeared that the ITC had set a date to resolve the investigation. *See* Pl.'s Br. 11-12; Pl.'s Ex. X.

Despite ANF's efforts, on July 9, 1999, Customs denied ANF's application for further review of its original protest, asserting that the merchandise was properly liquidated per Commerce's instructions. *See* Pl.'s Ex. AA.[4] Following this denial, on July 22, 1999, ANF continued its efforts by sending Customs a supplement to its protest. *See* Pl.'s Ex. BB. On August 4, 1999, Customs sent ANF a letter rejecting the supplement as untimely. *See* Pl.'s Ex. Z. This letter explicitly informed Plaintiff that its protest had been denied.

Meanwhile, the ITC decided to reexamine its original injury determination and issued a notice on May 20, 1998, requesting comments for a review of AD duties on imports of ferrosilicon in light of the "revelation of a nationwide ferrosilicon price-fixing conspiracy maintained by major U.S. ferrosilicon producers." *Ferrosilicon from Brazil, China, Kazakstan, Russia, Ukraine, and Venezuela*, 63 Fed. Reg. 27,747-01, 27,747 (Int'l Trade Comm'n May 20,

---

[4]The Government claims that it denied the protest itself on July 9, 1999. However, the form returned to Plaintiff had only the box labeled "application for further review" checked as denied.

1998). During the investigation, Commerce directed Customs to continue liquidation of entries of ferrosilicon imports under the original AD order. *See* Dep't of Commerce Message No. 8257111; Def.'s Ex. 2.

Commerce finally rescinded the AD order on ferrosilicon from China on September 21, 1999. *See Ferrosilicon from Brazil, Kazakhstan, People's Republic of China, Russia, Ukraine, and Venezuela*, 64 Fed. Reg. 51,097-01 (Dep't of Commerce Sept. 21, 1999). Commerce rescinded the order *ab initio*, stating that "rescission of these [AD] orders are effective from the date of their original issuance." *Id.* at 51,098. Following the August 4, 1999, denial letter from Customs and Commerce's rescission of the AD duties, ANF contacted Stuart Seidel, then the Assistant Commissioner of Customs of Regulations and Rulings, to discuss ANF's options in pursuing its protest. *See* Pl.'s Br. 14-15. Per Mr. Seidel's recommendation, ANF sent documents to various Customs officials on September 28, October 25, and November 9, 1999, to continue its attempt to have Customs reconsider the assessed AD duties. *See* Pl.'s Br. 39; Pl.'s Exs. FF, GG, HH. In December 1999, Mr. Seidel informed ANF that Customs would not change its denial of ANF's protest and that ANF should seek recourse in this Court. *See* Pl.'s Br. 15. On January 4, 2000, ANF filed a summons before this Court and filed its complaint on January 26, 2000.

## Standard of Review

Both parties have filed for summary judgment. Under USCIT Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); *see*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Parties moving for summary judgment bear the burden of demonstrating that there are no genuine issues of material fact in dispute.  *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988).  The court must "'determine whether there are any factual disputes that are material to resolution of the action.  The court may not resolve or try factual issues on a motion for summary judgment.'"  *Sea-Land Serv., Inc. v. United States*, 23 CIT 679, 684, 69 F. Supp. 2d 1371, 1375 (1999) (quoting *Phone-Mate, Inc., v. United States*, 12 CIT, 575, 577, 690 F. Supp. 1048, 1050 (1988)), *aff'd*, 239 F.3d 1366 (Fed. Cir. 2001).

### Plaintiff's Claim

ANF contests Customs' denial of its April 27, 1999, protest[5] and asserts jurisdiction for all claims under 28 U.S.C. § 1581(a).[6]  *See* Compl. ¶ 1.  For this Court to exercise jurisdiction over a claim under § 1581(a), the party filing suit must have filed a valid protest against Customs in a timely manner.  *See U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1568 (Fed. Cir. 1997), *aff'd*, 523 U.S. 360 (1998); *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1345-46 (Fed. Cir. 1995); *Atari Caribe, Inc. v. United States*, 16 CIT 588, 592, 799 F. Supp. 99, 104 (1992).  To qualify as valid, a

> protest must set forth distinctly and specifically – (A) each decision described in subsection (a) of this section as to which protest is made; (B) each category of merchandise affected by each decision set forth under paragraph (1); (C) the nature of each objection and the reasons therefor; and (D) any other matter required by the Secretary by regulation.

---

[5]Neither party disputes that the protest was filed in a timely manner.

[6] Section 1581(a) grants this Court jurisdiction over valid protests to Customs and reads, "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 [19 U.S.C. § 1515]."  28 U.S.C. § 1581(a).

19 U.S.C. § 1514(c)(1).   In addition, the protest must

> contain the following information:
> (1) The name and address of the protestant . . . and the name and address of his agent or attorney if signed by one of these;
> (2) The importer number of the protestant. . . ;
> (3) The number and date of the entry;
> (4) The date of liquidation of the entry . . . ;
> (5) A specific description of the merchandise affected . . . ;
> (6) The nature of, and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision, or refusal;
> (7) The date of receipt and protest number of any protest previously filed that is the subject of a pending application for further review pursuant to Subpart C of this part and that is alleged to involve the same merchandise and the same issues . . . ;
> (8) If another party has not filed a timely protest, the surety's protest shall certify that the protest is not being filed collusively to extend another authorized person's time to protest; and
> (9) A declaration, to the best of the protestant's knowledge, as to whether the entry is the subject of drawback, or whether the entry has been referenced on a certificate of delivery or certificate of manufacture and delivery so as to enable a party to make such entry the subject of drawback . . . .

19 C.F.R. § 174.13(a).   While the specific information necessary for each protest depends on the facts, a valid protest must, at a minimum, give "some information within the protest . . . that was reasonably calculated to direct the mind of Customs to the full nature of a specific claim." *Koike Aronson, Inc. v. United States*, 21 CIT 1056, 1057, 976 F. Supp. 1035, 1037 (1997), *aff'd*, 165 F.3d 906 (Fed. Cir. 1991).

ANF first claims that Customs improperly assessed AD duties because Customs liquidated the entry despite ANF's requests to delay liquidation pending the outcome of the ITC investigation into the original AD order. *See* Compl. ¶¶ 13-29; Pl's. Br. 38-39.  Secondly, ANF claims that Customs' liquidation was improper because Customs did not provide Amlon with

actual notice of a suspension, as required by 19 C.F.R. § 159.12(c).[7]  *See* Compl. ¶¶ 40-43; Pl.'s Br. 16-24.  ANF also claims that Customs improperly classified the subject merchandise.  *See* Compl. ¶¶ 31-38; Pl.'s Br. 25-31.  Finally, ANF claims that it is not liable for the payment of interest accrued on the AD duties.  *See* Compl. ¶ 48.

### Discussion

Subject matter jurisdiction is "the legal authority of a court to hear and decide a particular type of case."  Erwin Chemerinsky, *Federal Jurisdiction* 259 (4th ed. 2003).  A court must have subject matter jurisdiction over a claim "because it involves a court's power to hear a case, [and] can never be forfeited or waived."  *United States v. Cotton*, 535 U.S. 625, 630 (2002).  Moreover, courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y&H Corp.*, 126 S.Ct. 1235, 1244 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  Under USCIT Rule 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  USCIT R. 12(h)(3).[8]

---

[7]     Notice of suspension.  If the liquidation of an entry is suspended as required by statute or court order, as provided in paragraph (a)(2) of this section, the port director promptly shall notify the importer or the consignee and his agent and surety on Customs Form 4333-A, appropriately modified, of the suspension.

19 C.F.R. § 159.12(c).

[8]Because Plaintiff filed its summons on January 4, 2000, and complaint on January 26, 2000, the Court can have no jurisdiction to hear its claims under 28 U.S.C. § 1581(i).  *See* 28 U.S.C. §§ 1581, 2632(a)-(c); USCIT R. 3(a); *Autoalliance Int'l, Inc. v. United States*, 29 CIT __, 398 F. Supp. 2d 1326 (2005).

A.  THE ANTIDUMPING CLAIM

American National Fire asserts that this Court has jurisdiction over its antidumping claim pursuant to 28 U.S.C. § 1581(a) because the claim is a protest pursuant to 19 U.S.C. § 1514(a)(2) and (3).  *See* Pl.'s Br. 38.  For this court to have jurisdiction pursuant to 28 U.S.C. § 1581(a), there must be a valid protest filed against a decision of Customs at the administrative level.  *See Juice Farms, Inc.*, 68 F.3d at 1345-46.  The vague language in Plaintiff's complaint leaves the exact nature of the AD claim unclear and could be interpreted as either a challenge to the calculation of duties or, alternatively, as a challenge to the collection of duties.[9]  Plaintiff's Complaint asserts that ANF filed a timely protest against the "payment of antidumping duties assessed against Amlon" and that ANF is not responsible for the duties since "the ITC was reconsidering its assessment of antidumping duties on ferrosilicon imports from China."  Compl. ¶¶ 11, 26.  The former interpretation results in an invalid protest because calculation of duties in

---

[9]     The imprecise use of the word "assessment" by the parties throughout this case causes confusion with respect to the nature of the AD claim.  Plaintiff states in its complaint that it is protesting "Customs' decision to assess antidumping duties" in light of the ITC's investigation into the original AD orders.  Compl. ¶ 22.  Plaintiff argues that this Court has jurisdiction to hear the AD claim because Plaintiff protests the "rate and amount of duties chargeable" and "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury."  Pl.'s Br. 38.  Plaintiff's complaint and brief imply that it is protesting the *collection* of AD duties.  However, Defendant in its brief interprets Plaintiff's use of the word "assessment" to mean *calculation* of AD duties.  *See* Def.'s Br. 11-12.
        The confusion is compounded by the use of the word in statute and case law. 19 U.S.C. § 1673e addresses the assessment of duties and states that Commerce "directs customs officers to assess" in the sense that "assessment" means collection.  *See Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 976 (Fed. Cir. 1994) (describing § 1673e(a)(1): "Commerce conducts the antidumping duty investigation, calculates the antidumping margin, and issues the antidumping duty order.  Commerce then directs Customs to collect the estimated duties.").  However, to assess is defined as "to calculate the rate and amount" in Black's Dictionary. Deluxe Black's Law Dictionary 116 (6th ed. 1997).  Defendant's characterization of Plaintiff's claim as a protest against the calculation of duties seems to be based on the dictionary meaning of "assess."  Meanwhile, Plaintiff uses "assess" in its statutory meaning.  Either interpretation leaves Plaintiff without jurisdiction in this Court.

an AD context is performed by Commerce and involves no decision by Customs. The latter interpretation results in an invalid protest because the Customs' action ANF objects to is not protestable by statute. In either case, this court lacks subject matter jurisdiction over the claim.

1. The Antidumping Claim as a Complaint Against the Calculation of AD Duties

Defendant equates ANF's use of the phrase "assessment" of AD duties with "calculation" of AD duties.[10] *See* Def.'s Br. 11-12. A challenge to the calculation of AD duties is an issue for Commerce, not Customs, since calculation of such duties is a function reserved for Commerce. *See* 19 U.S.C. § 1673e(a)(1);[11] *U.S. Shoe Corp.*, 114 F.3d at 1570; *see also Nichimen Am., Inc. v. United States*, 938 F.2d 1286, 1290 (Fed. Cir. 1991). If the antidumping claim were a complaint against the calculation of antidumping duties, this Court could have jurisdiction pursuant to 28 U.S.C. § 1581(c)[12] because § 1581(c) grants this Court jurisdiction over final determinations by Commerce in antidumping procedures, which includes the calculation of AD duties. *See* 19 U.S.C. § 1516a(a)(2)(B); *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304 (Fed. Cir. 2004).

---

[10] ANF's AD protest to Customs read, "IMPROPER APPRAISEMENT: We protest the appraisement and duty assessment on all merchandise involved in the subject entry. The merchandise should have been appraised at the invoiced unit values or at values less than the liquidated values in accordance with the appraisement statutes and regulations." Pl.'s Ex. Q.

[11] In relevant part, 19 U.S.C. § 1673e(a)(1) states that Commerce "directs customs officers to assess . . . antidumping dut[ies]." 19 U.S.C. § 1673e(a)(1); *see also Mitsubishi Elecs. Am., Inc.*, 44 F.3d at 976 (describing § 1673e(a)(1): "Commerce conducts the antidumping duty investigation, calculates the antidumping margin, and issues the antidumping duty order. Commerce then directs Customs to collect the estimated duties.")

[12] "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930 [19 U.S.C. § 1516a]."
28 U.S.C. § 1581(c).

Therefore, to challenge the imposition of AD duties, a party must direct a request for administrative review to the Department of Commerce pursuant to 19 U.S.C. § 1675. *See* 19 U.S.C. § 1675. ANF could not incorporate this challenge in its protest to Customs. The court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1581(c) as ANF never requested such review. Furthermore, since this type of calculation by Customs is not included in the protestable decisions under 19 U.S.C. § 1514(a), this Court does not have jurisdiction over this issue under 28 U.S.C. § 1581(a).

2. The Antidumping Claim as an Objection Against the Collection of Duties

Plaintiff's AD claim may refer instead to Customs' liquidation of the ferrosilicon entry, which affected the collection of the AD duties. *See* Pl.'s Br. 38-39. Unlike a determination with regard to the amount of imposition of AD duties pursuant to an AD order, liquidation of entries is a function that belongs to Customs. *See Mitsubishi Elecs. Am., Inc.*, 44 F.3d at 976-77. However, while entry liquidation is a Customs *function*, it is not always a Customs *decision*. *Id.*; *see U.S. Shoe Corp.*, 114 F.3d at 1569 ("'[D]ecisions' of Customs are substantive determinations involving the application of pertinent law and precedent to a set of facts . . . . Customs must engage in some sort of decision-making process in order for there to be a protestable decision."). Thus, for the Court to have jurisdiction under 28 U.S.C. § 1581(a), ANF must have protested a "decision" made by Customs under 19 U.S.C. § 1514. 19 U.S.C. § 1514(a) lists the scope of

Customs "decisions" that a protestant can challenge.[13] The seven categories listed in § 1514(a) are exclusive, and if "Customs' underlying decision does not relate to any of these seven categories, the court may not exercise § 1581(a) jurisdiction over an action contesting Customs' denial of a protest filed against that decision." *Playhouse Imp. & Exp., Inc.*, 18 CIT 41, 44, 843 F. Supp. 716, 719 (1994).

Plaintiff contests the "decisions of Customs as to the 'rate and amount of duties chargeable' and 'all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury'" under 19 U.S.C. § 1514(a)(2) and (3). Pl.'s Br. 38. Customs' role in liquidating entries subject to AD orders is "merely ministerial," and those actions do not amount to antidumping "decisions" under 19 U.S.C. § 1514. *See Mitsubishi Elecs. Am., Inc.*, 44 F.3d at

---

[13] The relevant language from § 1514(a) states:

> [A]ny clerical error, mistake of fact, or other inadvertence . . . adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service . . . as to –
> (1) the appraised value of merchandise;
> (2) the classification and rate and amount of duties chargeable;
> (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
> (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;
> (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 or section 1504 of this title;
> (6) the refusal to pay a claim for drawback; or
> (7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title;
>
> shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade . . . .

19 U.S.C. § 1514(a).

977; *LG Elecs. U.S.A., Inc. v. United States*, 21 CIT 1421, 1425, 991 F. Supp. 668, 673 (1997).

Customs liquidates an entry to collect antidumping duties per Commerce's instructions, it

possesses no discretion in the matter. *See Hynix Semiconductor Am., Inc. v. United States*, 30

CIT __, __, 414 F. Supp. 2d 1317, 1327 (2006) (citing *Mitsubishi Elecs. Am., Inc.*, 44 F.3d at

977). In fact, "title 19 makes clear that Customs does not make any section 1514 antidumping

'decisions,'" and without a section 1514 decision, this court lacks jurisdiction under 28 U.S.C.

§ 1581(a). *Mitsubishi Elecs. Am., Inc.* 44 F.3d at 977. This court is without jurisdiction to hear

Plaintiff's AD claim, regardless of how it is construed.[14]

B. THE LIQUIDATION CLAIM

ANF claims that Customs improperly liquidated the entry because Customs sent the

notice of suspension to an incorrect address for Amlon.[15] The entry should, therefore, be deemed

liquidated at a duty-free rate.[16] *See* Pl.'s Br. 16-17. Plaintiff's brief sets forth multiple theories to

support its argument. ANF argues that improper notice to Amlon invalidated the suspension and

---

[14] ANF also claims that follow up letters it sent to Customs on September 28, October 25, and November 9, 1999, constitute 19 U.S.C. § 1520(c) petitions to protest "a mistake of fact on the part of the ITC." *See* Pl.'s Br. 39. Section 1520(c), now repealed, referred to mistakes of fact made by Customs or the importer. *See G&R Produce Co. v. United States*, 381 F.3d 1328, 1332 (Fed. Cir. 2004). However, because assessment of AD duties does not fall under Customs' purview, § 1520(c) does not apply as a valid form of protest, and ANF's petition fails.

[15] ANF stated in its original protest to Customs at the administrative level that the surety did not receive notice. However, ANF's complaint and brief before this court aver that Amlon, the importer, did not receive notice. *See* Compl. ¶ 43, Pl.'s Br. 17-25, Pl.'s Ex. Q. This inconsistency does not make the protest invalid since a protest need only give "some information within the protest . . . that was reasonably calculated to direct the mind of Customs to the full nature of a specific claim" to meet specificity requirements in 19 U.S.C. § 1514(c). *Koike Aronson, Inc.*, 21 CIT at 1057; *see also* 19 U.S.C. § 1514(c); 19 C.F.R. § 174.13(a).

[16] A protest concerning Customs' adherence to 19 U.S.C. § 1504 (Customs' limitations on liquidation including sending notices of suspension) constitutes a recognized category of protests under 19 U.S.C. § 1514(a)(5). Therefore, the court has jurisdiction under 28 U.S.C. § 1581(a) over the liquidation claim.

that Customs' failure to correctly carry out its statutorily-mandated notice of suspension should in itself render the liquidation invalid. Likewise, ANF argues that Customs abused its discretion by liquidating the entry despite an ongoing ITC investigation into the original AD determination. For reasons set forth below, both theories fail to invalidate Customs' liquidation of the entry.

1. Imperfect Notice to Amlon Resulted in Harmless Error

ANF claims that Customs' suspension was invalid either because Amlon did not receive notice or because as a matter of law, Customs failed to adhere to statutory mandates for notice.[17] *See* Pl.'s Br. 16-17; *see also* 19 U.S.C. § 1504(c). However, failure to give notice of a suspension does not necessarily vitiate a suspension. *See LG Elecs. U.S.A., Inc.*, 21 CIT at 1429. 19 C.F.R. § 159.12(c) addresses the notice provision for suspensions and states that "[i]f the liquidation of an entry is suspended as required by statute or court order, . . . the port director promptly shall notify the importer . . . and his agent and surety . . . of the suspension." 19 C.F.R. § 159.12(c); *see also* 19 U.S.C. 1504(c). "'[S]uspensions' occur as soon as the appropriate Commerce determination is made" and do not require subsequent action by Customs to occur because they occur by operation of law or court order.[18] *LG Elecs. U.S.A., Inc.*, 21 CIT at 1429 n.15.

---

[17]    Notice of suspension
        If the liquidation of any entry is suspended, the Secretary shall by regulation require that notice of the suspension be provided, in such manner as the Secretary considers appropriate, to the importer of record or drawback claimant, as the case may be, and to any authorized agent and surety of such importer of record or drawback claimant.

19 U.S.C. § 1504(c).

[18] Suspensions occur "only when provided by law or regulation, or when directed by the Commissioner of Customs" or when required by court order. 19 C.F.R. § 159.51; *see* § 159.12(a)(2). In contrast, extensions do not occur until Customs takes action by giving notice per 19 C.F.R. § 159.12(a) and (b). *See also LG Elecs. U.S.A.*, 21 CIT at 1429 n.15.

Once a suspension occurs, the statute requires Customs to send suspension notices to importers and sureties pursuant to 19 C.F.R. § 159.12 and 19 U.S.C. § 1504(c). *See Frontier Ins. Co. v. United States*, 25 CIT 717, 724-25, 155 F. Supp. 2d 779, 786-87 (2001); *Hanover Ins. Co. v. United States*, 25 CIT 447, 456 (2001) (not reported in F. Supp.). However, the Court has not held that courts must reverse agency actions if procedural missteps occur. *See Guangdong Chems. Imp. & Exp. Corp. v. United States*, CIT Slip Op. 06-13 (Jan. 25, 2006); *Atteberry v. United States*, 27 CIT __, __, 2003 WL 21748674, at *8-11 (2003) (not reported in F. Supp.).

Procedural errors by Customs are harmless unless the errors are "prejudicial to the party seeking to have the action declared invalid." *Sea-Land Serv., Inc. v. United States*, 14 CIT 253, 257, 735 F. Supp. 1059, 1063 (1990) (stating that Customs' failure to include provisions required by law in denial letter to plaintiff was still harmless error because plaintiff did not plead any prejudice) (quotations & citation ommitted), *aff'd and adopted*, 923 F.2d 838 (Fed. Cir. 1991); *see also Intercargo Ins. Co. v. United States*, 83 F.3d 391, 394-95 (Fed. Cir. 1996) ("rule of prejudicial error" applies to defective notice of extension to plaintiff).

ANF does not state with any particularity what prejudice it suffered. *See* Pl.'s Br. 18. ANF provides no evidence to support its claim that imperfect notice to Amlon resulted in prejudice to either Amlon or itself. Therefore, Customs' imperfect notice to Amlon amounts to harmless error because ANF has shown no prejudicial harm suffered by Amlon or itself as a result of Customs' procedural misstep. *See Sea-Land Serv.*, 14 CIT at 257.

2.  Abuse of Discretion by Customs in Liquidating the Entry

ANF also contends that Customs should not have liquidated the entry given the ongoing ITC investigation into the original AD determination on ferrosilicon imports from China. *See* Pl.'s Br. 5-6, 10-15, 38-39, 44-45. While it is true that the original AD determination was under

investigation by the ITC when Commerce issued its instructions to Customs to liquidate the

entry, Customs did not abuse its discretion in liquidating the entry on November 20, 1998,

because it had no discretion in the matter. Customs' liquidation role is "merely ministerial." *See*

*Mitsubishi Elecs. Am., Inc.*, 44 F.3d at 977. "Commerce conducts the antidumping duty

investigation, calculates the antidumping margin, and issues the antidumping duty order.

Commerce then directs Customs to collect the estimated duties." *Id.* at 976 (citing

19 U.S.C. § 1673e(a)(1)).

In this case, Commerce instructed Customs to liquidate the entry in accordance with

19 C.F.R. § 351.212(c), which calls for automatic liquidation of AD duties if no interested party

requests a review. *See* 19 C.F.R. § 351.212(c); Dep't of Commerce Message No. 8257111;

Def.'s Ex. 2. Customs merely followed Commerce's September 14, 1998, instructions. ANF has

not presented a valid claim that Customs abused its discretion by liquidating the entry.

C.  THE CLASSIFICATION CLAIM

American National Fire also contends that Customs incorrectly classified the subject

merchandise as ferrosilicon and should have classified the merchandise under another category

which enjoys duty-free treatment.[19] *See* Compl. ¶¶ 31-38; Pl.'s Br. 25-31. To bring a

classification claim before this Court, a claimant must have "inform[ed] Customs of the nature of

the objections to the classification" at the administrative level in a protest. *See Koike Aronson,*

*Inc.*, 21 CIT at 1057. This requirement aims

> to: compel [the importer] to disclose the grounds of his objection at the time when
> he makes his protest . . . . Technical precision is not required; but the objections
> must be so distinct and specific, as, when fairly construed, to show that the
> objection taken at the trial was at the time in the mind of the importer, and that it
> was sufficient to notify the collector of its true nature and character to the end that

---

[19]A classification protest qualifies as a valid category of protests against Customs' actions under
19 U.S.C. § 1514(a)(2).

> he might ascertain the precise facts, and have an opportunity to correct the mistake
> and cure the defect, if it was one which could be obviated.

*Wash. Intern. Ins. Co. v. United States*, 16 CIT 599, 602 (1992) (citing *Davies v. Arthur*, 96 U.S. 148, 151 (1878)) (brackets & ellipses in original) (not reported in F. Supp.). More specifically, a valid protest must have "distinctly and specifically" set forth the decision as to which the protest is made, the category of merchandise affected by the decision, and the nature and reason of the objection. 19 U.S.C. § 1514(c).

ANF's classification claim in its original protest stated: "IMPROPER CLASSIFICATION: We protest the classification of all imported merchandise. It should be classified as entered." Pl.'s Ex. Q. Plaintiff claims that these two sentences "put classification into play so it could either amend or supplement its initial classification choice (as entered) in accordance with 19 C.F.R. § 174.14 and 19 C.F.R. § 174.28." Pl.'s Br. 37. This skeletal protest, though, does not meet the statutory requirements. It does not specify what Customs classification is being protested; in fact, the claim seems to argue that the original Customs classification was correct because it asserts that the merchandise "should be classified as entered." It fails to set forth any reason for the objection or to state the nature of the objection. There is also no statement about what Harmonized Tariff number ANF objects to or what the alleged correct classification number should be. Because the protest does not meet the requirements in § 1514(c), the protest, by itself, is not valid. Consequently, ANF states that the court should consider its July 22, 1999, letter to Customs a supplement or, alternatively, an amendment that cures the defects in its original classification protest.[20] *See* Pl.'s Br. 37.

_____

[20]While both parties refer to the July 22, 1998, letter interchangeably as a supplement or amendment, the court will refer to it as a "supplement" when discussing it under 19 C.F.R. § 174.28 and an "amendment" when discussing it under 19 C.F.R. § 174.14.

    1.  The Letter as a Supplement Under 19 C.F.R. § 174.28

ANF argues that it perfected its classification protest pursuant to 19 C.F.R. § 174.28 when it supplemented its protest to Customs with a letter dated July 22, 1999.  *See* Pl.'s Br. 37. Section 174.28 allows for consideration of additional arguments, through supplements, in the review and disposition of valid protests.  The section reads:

> In determining whether to allow or deny a protest filed within the time allowed, a reviewing officer *may* consider alternative claims and additional grounds or arguments submitted in writing by the protesting party with respect to any decision which is the subject of a *valid* protest at any time prior to disposition of the protest . . . .

19 C.F.R. § 174.28 (emphasis added).  Since ANF's original classification protest did not meet the statutory requirements for a valid protest, the letter - or any other claimed supplement for that matter[21] - cannot serve as a supplement.  Under these circumstances, the court cannot exercise subject matter jurisdiction over the classification claim.

    2.  The Letter as an Amendment Filed Under 19 C.F.R. § 174.14

In the alternative, ANF attempts to cure the defects in its initial classification protest by stating that it amended the original claim with the letter pursuant to 19 C.F.R. § 174.14.  *See* Pl.'s Br. 37.  Under 19 C.F.R. § 174.14(a), a protest "may be amended at any time prior to the expiration of the 90-day period within which such protest may be filed determined in accordance with § 174.12(e)."  19 C.F.R. § 174.14(a).  Section 174.12(e) reads in pertinent part, "[p]rotests shall be filed . . . within 90 days after . . . [t]he date of mailing of notice of demand for payment against a bond in the case of a surety which has an unsatisfied legal claim under a bond written by the surety."  *Id.* § 174.12(e).

---

[21] E.g., ANF claims that an oral argument it made to Customs on June 29, 1999, counts as a supplement.  *See* Pl.'s Br. 37.

Since Customs sent ANF a demand for payment on March 19, 1999, the 90-day period began on that date, making June 17, 1999, the end of the 90-day period. ANF's July 22, 1999, letter thus fails as an amendment to the protest because ANF submitted the letter after the 90-day period. Without a valid amendment to perfect the faulty April 27,1999, classification protest this Court has no jurisdiction to hear the claim.

3.  Equitable Tolling to Allow the July 22, 1999, Letter as an Amendment Under
19 C.F.R. § 174.14

American National Fire also asks the court to equitably toll the 90-day period under 19 C.F.R. § 174.14 so that its letter from July 22, 1999, may count as a valid amendment.[22] Pl.'s Br. 36. ANF argues that the start date of the 90-day period in which to file and amend the protest should be tolled to May 12, 1999, because on that date, it received sufficient information from Customs to perfect its protest. *See* Pl.'s Br. 33-34. However, as Plaintiff correctly notes, equitable tolling is not the norm, and courts allow it only in rare instances. *See Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990).

With respect to suits against the Government, the time limits imposed "involve a waiver of sovereign immunity," but remain subject to the same equitable tolling limitations for private parties. *Id.* ANF cites cases illustrating that courts rarely employ equitable tolling, and most of the cases it cites actually hold equitable tolling inapplicable. *See id.* at 97 (holding equitable tolling does not extend to "garden variety" excusable neglect); *Weddel v. Sec'y of HHS*, 100 F.3d 929, 931 (Fed. Cir. 1996) (stating that equitable tolling does not apply to statutes of repose

---

[22] Plaintiff states that it is "not asking the Court to toll the time to extent [sic] the jurisdictional requirement of filing a Protest in 90 days, but rather to toll the time in which it had to provide the specifics Customs claims was missing in the initial Protest." Pl.'s Br. 35. It is unclear what "specifics" Plaintiff refers to since nothing on the record demonstrates that Customs asked for missing information after ANF submitted its protest. The court assumes Plaintiff wants the court to toll the time ANF had to file an amendment.

because they cut off cause of action irrespective of time of accrual, and that equitable tolling is usually available unless statute indicates contrary intent by establishing outer date for bringing action); *U.S. JVC Corp. v. United States*, 22 CIT 687, 697, 15 F. Supp. 2d 906, 915 (1998) (finding "presumption that the ninety-day period for filing a protest imposed by 19 U.S.C. § 1514(3) contains an equitable tolling exception has been rebutted by the language, structure, and purpose of 19 U.S.C. § 1514"), *aff'd*, 184 F.3d 1362 (Fed. Cir. 1999).

ANF cites one case that supports its position. In *Farrell Lines, Inc. v. United States*, the court equitably tolled the 90-day period within which the plaintiff had to file a protest. 69 C.C.P.A. 1, 6 (1981). However, while not explicitly overruled, the holding in *Farrell Lines* has been questioned. *See U.S. JVC Corp*, 22 CIT at 691 n.7. More significantly, the majority in *Farrell Lines* did not discuss the purpose underlying the 90-day period or its jurisdictional ramifications. *Id.* The court in *U.S. JVC Corp.* noted that courts faced with *Farrell Lines* have sought to clarify, limit, or find inapposite its holding. *Id.* (citations omitted).

Given the high legal threshold to sustain an equitable tolling claim, ANF must demonstrate with specificity the facts that warrant resorting to this unorthodox measure. *See Irwin*, 498 U.S. at 96. ANF provided only the cover sheet to Customs' communication with it on May 12, 1999, as evidence for equitably tolling to this date. That cover sheet indicates that the document which Customs provided was three pages long and entitled "Liquidation Instructions for dumping case A-570-819-000 Ferrisolicon [sic] from China (PRC)."[23] Pl.'s Ex. S.

---

[23] The court believes that the fax cover sheet from Customs refers to Message No. 8257111 from Commerce, which provided liquidation instructions for ferrosilicon from China. This document is three pages long and included as Exhibit K in Plaintiff's brief.

ANF has not demonstrated how it needed this communication to perfect its classification protest. None of the documents that ANF referenced in its July 22, 1999, letter fell exclusively within Customs' control. The classification claim in the letter referenced the HTSUS, a mill test certificate, a product invoice, and a letter from the end purchaser stating that the product could not be used for its intended purchase and was disposed of by landfill. *See* Pl.'s Ex. BB. Because neither the letter nor Plaintiff's brief demonstrate why Plaintiff needed Customs' May 12, 1999, communication to perfect its classification protest, ANF fails to make its case for equitable tolling. In addition, assuming *arguendo* that ANF required the May 12, 1999, documents from Customs to perfect its protest, ANF still had 36 days before the June 17, 1999, deadline to submit the amendment. Thus, the court finds no reason for equitable tolling to apply to the classification claim. Because the classification protest is invalid under 19 U.S.C. § 1514(a), the court lacks subject matter jurisdiction over the issue. *See* 28 U.S.C. § 1581(a).

D. INTEREST PAYMENTS

Without support, American National Fire alleges that it "is not responsible for the payment of any interest resulting from the liquidation of the subject entry at a value higher than asserted at the time of entry which may be owed to the Defendant." Compl. ¶ 48. As Defendant points out, the terms of ANF's continuous bond do not exclude interest. *See* Def.'s Br. 43; Def.'s Ex. 11. Under 28 U.S.C. § 2637(a), a claimant must pay "all liquidated duties, charges, or exactions" at the time an action in this Court is commenced. 28 U.S.C. § 2637(a). Furthermore, charges and exactions under § 2637(a) "include the assessment of interest on the late payment of liquidated duties." *Syva Co. v. United States*, 12 CIT 199, 205, 681 F. Supp. 885, 890 (1988); *see Can. Fur Trappers Corp. v. United States*, 884 F.2d

563, 566 (Fed. Cir. 1989). Thus, payment of interest is a prerequisite to invoke this Court's jurisdiction, *see* 28 U.S.C. § 2637(a), and Plaintiff's interest payment claim is without merit.

**Conclusion**

Although the court is left without recourse to address ANF's complaints, the court is nevertheless troubled by Customs' behavior throughout the administrative phase of this case. The facts of this case are a textbook example of why careful attention to importer's claims at the administrative level are good policy. ANF's attorney contacted Customs throughout the administrative review process to get guidance on filing its claims and received only poorly written responses, which added to ANF's confusion before it finally sought recourse in this Court.[24] Nevertheless, mandatory jurisdictional requirements dictate that this Court grant the Government's motion for summary judgment and deny Plaintiff's motion. A judgment will be issued accordingly.

July 18, 2006                                    /s/ Judith M. Barzilay

Dated:_____          _____

New York, NY                                    Judge

---

[24] There is also the confusing *ab initio* nature of the antidumping rescission order from Commerce. It is unclear why Commerce even made an *ab initio* determination if only unliquidated entries would be affected since the result is no different from a normal rescission. For Commerce to order the liquidation of entries while at the same time investigating an enormous price-fixing conspiracy concerning these entries leaves businesses such as the Plaintiff to conclude the Government unjustly enriches itself to the detriment of its citizens.